**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Solar Power, LLC, | No. CV 10-8117-PCT-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| JPMorgan Chase Bank, N.A., | |
| Defendant. | |

    Pending before this Court is a Motion for Remand filed by Plaintiff Arizona Solar Power, LLC ("Plaintiff" or "ASP"). (Doc. 13). For the reasons set forth below, the Court grants Plaintiff's motion.

**BACKGROUND**

    According to Plaintiff's complaint, in October 2008, Plaintiff opened nine bank accounts with JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"), in association with its business. (Doc. 9). In February 2010, Plaintiff fired its Vice President of Sales, Daniel Nitta, for breach of fiduciary duties. Shortly thereafter, Nitta's attorney contacted Plaintiff and demanded certain payments; Plaintiff refused to make any payments. Several weeks later, Plaintiff discovered that Nitta had deposited three checks, described as bonuses, totaling $15,000. The money was to be paid from Plaintiff's payroll account. ASP president Young Ho Kim contacted Chase and explained that the checks had been drafted without

authorization and requested that they not be honored.

Plaintiff alleges that following this discussion, Chase investigated the claim and considered information received only from Nitta. As a result of this "one-sided investigation," Chase decided to honor the checks. Ultimately, the disputed account became overdrawn by $15,000, and on May 22, 2010, Chase froze all nine of ASP's business accounts. On May 26, 2010, ASP contacted Chase and requested that the freeze be lifted. Chase informed ASP that it would be three to five business days before the accounts would be unfrozen; however, as of June 9, 2010, the accounts were still frozen.

On June 10, 2010, Plaintiff filed a complaint in Yavapai County Superior Court. The complaint included the following claims: breach of fiduciary duty, breach of contract, conversion of instrument, pursuant to A.R.S. § 47-3420, and conversion. Plaintiff requested judgment for damages of at least $65,001. Plaintiff also noted that it would seek "general and special damages, including punitive damages, in an amount to be proven at trial," and "reasonable attorney's fees."

Defendant filed a notice of removal, alleging that the District Court has subject matter jurisdiction based on diversity. (Doc. 1). Plaintiff requests that the action be remanded, pursuant to 28 U.S.C. § 1447, because this Court lacks jurisdiction. (Doc. 13). Although Plaintiff concedes complete diversity of the parties, it challenges Defendant's assertion that the amount in controversy exceeds $75,000. (*Id.*).

**DISCUSSION**

**I. Legal Standard**

"Under 28 U.S.C. § 1441(a), the district courts have removal jurisdiction over any claim that could have been brought in federal court originally." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686–87 (9th Cir. 2007). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). There is a "strong presumption" against removal, which means that "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the

right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)) (internal quotations omitted).

## II. Analysis

Here, Defendant asserts that removal is proper because the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff concedes diversity of citizenship between the parties, but contends that the amount in controversy does not exceed the statutory minimum requirement of $75,000. "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,] . . . [the defendant bears the burden of] 'establishing that it is more likely than not that the amount in controversy exceeds that [$75,000] amount.'" *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).

In the complaint, Plaintiff requested damages in the amount of "at least $65,001." (Doc. 9). Plaintiff then requested "general and special damages, including punitive damages, in an amount to be proven at trial" and "reasonable attorney's fees." Although it is clear that Plaintiff was attempting to avoid compulsory arbitration under Ariz. R. Civ. P. 72 by pleading damages in excess of $65,000, what damages are included in the request for $65,001 is ambiguous. Accordingly, Defendant must "provide evidence" demonstrating that the amount in controversy exceeds $75,000. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (quoting *Sanchez*, 102 F.3d at 404). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003).

In its Response, Defendant reasonably interprets Plaintiff's complaint as requesting $65,001 in actual damages plus punitive damages and an award of attorney's fees. (Doc. 16). Defendant contends that Plaintiff's "good faith calculation" of damages consists solely of compensatory damages, and therefore, any claim by Plaintiff that it will request less than $10,000 in punitive damages and attorney's fees "is disingenuous, at best."(*Id.*). Defendant correctly notes that a potential award of attorney's fees may be included in the amount in

1  controversy if an underlying statute authorizes an award of attorney's fees. *Galt G/S v. JSS*
2  *Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Defendant asserts that it has already
3  incurred $2500 in fees, and therefore, "there can be no doubt that at least $10,000 in legal
4  fees must be added to the $65,001" amount alleged. (Doc. 16).

Plaintiff assures the Court in its Motion and again in its Reply that its request for $65,001, "includes all damages that plaintiff will allege at trial." (Doc. 17). "The good faith amount alleged in its complaint consists of a good faith calculation of compensatory *and* punitive damages." (Doc. 17).[1] Moreover, Plaintiff offers that punitive damages will be less than originally anticipated because at the time Plaintiff filed its complaint, its nine bank accounts remained frozen. (Doc. 13). "So the speculated damages . . . included the then present fact that those accounts were inaccessible and there was no indication as to when those accounts would be released." (*Id.*). However, just a few days after the complaint was filed and an order for Defendant to show cause was issued, Defendant released the accounts. (Doc. 17). Thus, "considering the facts at the time the amount in controversy was estimated, plaintiff's injury was likely to have been a much larger and more lasting injury than what actually occurred." (Doc. 17).

With that in mind, Defendant cannot meet its burden of showing by a preponderance of evidence that the amount in controversy will exceed $75,000.

/ / /
/ / /
/ / /
/ / /

---

[1] This interpretation of Plaintiff's calculation of the amount in controversy is by no means easily discernable. Plaintiff contends that Rule 72 of the Arizona Rules of Civil Procedure requires the amount in controversy pleaded by plaintiff to include punitive damages. (Doc. 17). It is true that Plaintiff was required to certify that damages sought, including punitive damages, exceed the limits set by the local rules. However, in its certificate, Plaintiff merely stated that the damages sought exceed the limit. Plaintiff did not specify that the $65,001 amount included punitive damages.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand to State Court (Doc. 13) is **GRANTED**.

DATED this 20th day of October, 2010.

*H. Murray Snow*
G. Murray Snow
United States District Judge